[No. 82613-7.   En Banc.]
Argued January 26, 2010.     Decided April 15, 2010.

THE STATE OF WASHINGTON, *Respondent*, v. CHRISTOPHER
LAWRENCE JONES, *Petitioner*.

*Eric Broman* (of *Nielsen, Broman & Koch PLLC*) for petitioner.

*Andrew K. Miller, Prosecuting Attorney*, and *Sarah Helena Villanueva Perry, Deputy*, for respondent.

¶1 OWENS, J. — This case allows us to consider whether a trial court can bar a criminal defendant from testifying about sexual conduct contemporaneous with an alleged criminal act. The defendant argues that the trial court violated his Sixth Amendment right to present a defense when it effectively barred him from testifying about his version of the events during an alleged rape. We hold that the trial court erred by (1) preventing the defendant from testifying about the events in question and (2) improperly applying the rape shield statute (RCW 9A.44.020(2)). Since this error was not harmless beyond a reasonable doubt, we reverse and remand for a new trial.

## FACTS

¶2 K.D.[1] claimed that her uncle, Christopher Jones, put his hands around her neck and forcibly raped her. Jones was then charged in Benton County Superior Court with first degree rape of K.D. The jury found Jones not guilty of first degree rape but could not reach agreement on the lesser offense of second degree rape. The prosecutor then amended the charge to second degree rape and alleged the aggravating circumstance of use of a position of trust to facilitate the commission of the crime.

¶3 A second trial commenced and, in an offer of proof, Jones's attorney argued that Jones wished to testify that on the night of the incident K.D. used alcohol and cocaine and engaged in consensual sex not only with Jones but also with two other men. More specifically, Jones was prepared to testify that Jones and K.D. went to the King City Truck Stop where they met two men and one woman and that during a nine-hour alcohol- and cocaine-fueled sex party the two women danced for money and engaged in consensual sexual intercourse with all three males. The court found that evidence of the sex party was offered for the purpose of attacking the victim's credibility and was barred

---

[1] K.D. was 17 years of age at the time of the alleged rape. We use initials to protect her identity.

by the rape shield statute. The court therefore ruled that Jones could not testify to these claims or cross-examine K.D. about them, despite Jones's protests that the ruling prevented him from exercising his right to confrontation and his right to present a defense.

¶4 At trial, the State called K.D. and Officer Roy Shepherd of the Richland Police Department to the stand. K.D. testified that Jones put his hands around her neck, told her he would kill her, and raped her. Officer Shepherd testified that after a warrant was issued for Jones's arrest, Jones fled to Texas and never contacted the Richland Police Department. Shepherd then testified that after Jones was finally extradited from Texas, Shepherd interviewed Jones, and Jones denied any sexual contact with his niece. Shepherd also testified that Jones refused to take a DNA (deoxyribonucleic acid) swab test and provided a swab only after a Benton County judge forced him to do so. Jones did not testify at trial, and neither K.D.'s brother nor the other participants in the alleged sex party were called to the stand. Just before closing argument, the trial court backtracked from its prior position and stated that Jones had not been prevented from testifying that the sexual contact with his niece was consensual, despite Jones's protests to the contrary.

¶5 In closing, the State's attorney argued that after Jones was accused of the rape, Jones did not call the police, stating, "[W]hat did the defendant do after this took place? What did he do? . . . [D]id he clear up any misunderstanding? No. Did he find Detective Shepherd and say, 'Boy, big misunderstanding here. We need to clear this up?' No. . . . He didn't come right back up and say, 'Let's clear this up.' He didn't call Detective Shepherd and go, 'Holy cow, I've got a warrant out for rape for me. I better get to the bottom of this.'" 2 Verbatim Report of Proceedings (VRP) at 330-31. The State's attorney also said that Jones refused to give a DNA swab sample and that the police had to get a court order before Jones would give his DNA swab sample. The jury found Jones guilty of second degree rape with the

aggravating circumstance of use of a position of trust to facilitate the commission of the crime.

¶6 Jones appealed to the Court of Appeals, Division Three, which affirmed the conviction but remanded for resentencing based on another issue that is not before this court. *State v. Jones*, noted at 147 Wn. App. 1024, 2008 WL 4889993, 2008 Wash. App. LEXIS 2682. We granted review. *State v. Jones*, 166 Wn.2d 1005, 208 P.3d 1124 (2009).

## ISSUES

¶7 1. Did the trial court violate the Sixth Amendment to the United States Constitution when it refused to let Jones testify about the alleged sex party?

¶8 2. Did the rape shield statute apply?

¶9 3. Was the error harmless?

¶10 4. Must the State refrain from prejudicial misconduct upon remand?

## STANDARD OF REVIEW

¶11 We review a claim of a denial of Sixth Amendment rights de novo. *State v. Iniguez*, 167 Wn.2d 273, 280-81, 217 P.3d 768 (2009). Since Jones argues that his Sixth Amendment right to present a defense has been violated, we review his claim de novo.

## ANALYSIS

I.   The Trial Court Violated the Sixth Amendment When It Refused To Let Jones Testify about the Sex Party

¶12 Jones argues that the trial court improperly refused to let him testify or cross-examine witnesses about the events on the night of the alleged sexual encounter. As noted above, the trial court ruled that the evidence was

offered for the purpose of attacking the victim's credibility and was barred by the rape shield statute. Jones argues that this ruling violated his Sixth Amendment right to present a defense. We agree.

¶13 "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." *Chambers v. Mississippi*, 410 U.S. 284, 294, 93 S. Ct. 1038, 35 L. Ed. 2d 297 (1973). A defendant's right to an opportunity to be heard in his defense, including the rights to examine witnesses against him and to offer testimony, is basic in our system of jurisprudence. *Id.* "The right to confront and cross-examine adverse witnesses is [also] guaranteed by both the federal and state constitutions." *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002) (citing *Washington v. Texas*, 388 U.S. 14, 23, 87 S. Ct. 1920, 18 L. Ed. 2d 1019 (1967)).

¶14 These rights are not absolute, of course. Evidence that a defendant seeks to introduce "must be of at least minimal relevance." *Id.* at 622. Defendants have a right to present only relevant evidence, with no constitutional right to present *irrelevant* evidence. *State v. Gregory*, 158 Wn.2d 759, 786 n.6, 147 P.3d 1201 (2006). "[I]f relevant, the burden is on the State to show the evidence is so prejudicial as to disrupt the fairness of the fact-finding process at trial." *Darden*, 145 Wn.2d at 622. The State's interest in excluding prejudicial evidence must also "be balanced against the defendant's need for the information sought," and relevant information can be withheld only "if the State's interest outweighs the defendant's need." *Id.* We must remember that "the integrity of the truthfinding process and [a] defendant's right to a fair trial" are important considerations. *State v. Hudlow*, 99 Wn.2d 1, 14, 659 P.2d 514 (1983). We have therefore noted that for evidence of *high* probative value "it appears no state interest can be compelling enough to preclude its introduction consistent with the Sixth Amendment and Const. art. 1, § 22." *Id.* at 16. In *Hudlow*, we made a clear distinction between evidence of the general promiscuity of a rape victim and evidence that,

if excluded, would deprive defendants of the ability to testify to their versions of the incident. *Id.* at 17-18. In that case, evidence of past general promiscuity could be excluded, but the clear implication was that evidence of high probative value could not be restricted regardless of how compelling the State's interest may be if doing so would deprive the defendants of the ability to testify to their versions of the incident. *Id.* at 16-18.

¶15 Jones was prepared to testify that K.D. consented to sex during an all-night, drug-induced sex party. The trial court refused to let Jones present this testimony or cross-examine K.D. about the testimony. 2 VRP at 199-200. This is not marginally relevant evidence that a court should balance against the State's interest in excluding the evidence. Instead, it is evidence of extremely high probative value; it is Jones's entire defense. Jones's evidence, if believed, would prove consent and would provide a defense to the charge of second degree rape. Since no State interest can possibly be compelling enough to preclude the introduction of evidence of high probative value, the trial court violated the Sixth Amendment when it barred such evidence.

¶16 After the court effectively barred Jones from presenting his defense and after all witnesses had already testified, the trial court attempted to say that Jones had not been precluded from testifying to the issue of consent alone. The trial court's formulation would have allowed testimony of consent, but devoid of any context about how the consent happened or the actual events. 2 VRP at 309-11. These were essential facts of high probative value whose exclusion effectively barred Jones from presenting his defense. The trial court prevented him from presenting a meaningful defense. This violates the Sixth Amendment.

## II.  The Rape Shield Statute Did Not Apply

¶17 The trial court ruled that the sex party evidence was offered for the purpose of attacking the victim's credibility and was barred by the rape shield statute. 2 VRP at

199-200. The trial court erred, as the rape shield statute did not apply to the case at hand, and even if it did apply, the rape shield statute cannot be used to bar evidence of high probative value.

¶18 The rape shield statute provides:

> Evidence of the victim's past sexual behavior including but not limited to the victim's marital history, divorce history, or general reputation for promiscuity, nonchastity, or sexual mores contrary to community standards is inadmissible on the issue of credibility and is inadmissible to prove the victim's consent except as provided in subsection (3) of this section, but when the perpetrator and the victim have engaged in sexual intercourse with each other in the past, and when the past behavior is material to the issue of consent, evidence concerning the past behavior between the perpetrator and the victim may be admissible on the issue of consent to the offense.

RCW 9A.44.020(2).

¶19 The rape shield statute does not apply in this case. The Court of Appeals correctly stated that "[n]o Washington case has defined the phrase 'past sexual behavior' for purposes of the rape-shield statute." *Jones*, 2008 WL 4889993, at *5, 2008 Wash. App. LEXIS 2682, at *13. It also correctly noted that Division Three had previously questioned whether flirtatious behavior on the evening of a rape counted as past sexual conduct and held that such behavior was not barred by the rape shield statute. *Id.* (citing *State v. Sheets*, 128 Wn. App. 149, 156-58, 115 P.3d 1004 (2005)). A quick reading of the rape shield statute, however, shows that it applies only to *past* sexual behavior. When interpreting a statute, we must first look to its language. *Cerrillo v. Esparza*, 158 Wn.2d 194, 201, 142 P.3d 155 (2006). "If the language is not ambiguous, we give effect to its plain meaning. 'If a statute is clear on its face, its meaning is to be derived from the language of the statute alone.'" *Id.* (quoting *Kilian v. Atkinson*, 147 Wn.2d 16, 20, 50 P.3d 638 (2002)). The language of the statute states unequivocally that evidence of the victim's "past sexual behavior" is "inadmissible to prove the victim's consent." RCW 9A.44.020(2). Any read-

ing of the statute that conflates "past" with "present" sexual conduct is tortured. The statute was not designed to prevent defendants from testifying as to their version of events but was instead created to erase the misogynistic and antiquated notion that a woman's past sexual behavior somehow affected her credibility. *Hudlow*, 99 Wn.2d at 8-9.

¶20 Jones's evidence refers not to past sexual conduct but to conduct on the night of the alleged rape. He wanted to testify that K.D. was not raped, but that she consumed alcohol and cocaine and consented to sex with three men during an all-night sex party. If we bar this evidence because of the rape shield statute, we are effectively reading the word "past" out of the statute. There is no indication that this is what the legislature intended.

¶21 Even if the rape shield statute did apply, it cannot be used to bar evidence of extremely high probative value per the Sixth Amendment. The rape shield statute was created for the purpose of ending an antiquated common law rule that "a woman's promiscuity somehow had an effect on her character and ability to relate the truth." *Id.* at 8. The statute was aimed at ending the misuse of prior sexual conduct evidence, so that a woman's general reputation for truthfulness could not be impeached because of her prior sexual behavior. *Id.* at 8-9. More specifically, the statute "is based on the observation that such evidence is usually of little or no probative value in predicting the victim's consent to sexual conduct on the occasion in question." *Id.* at 9 (citing *State v. Geer*, 13 Wn. App. 71, 73-74, 533 P.2d 389 (1975)). This does not mean that evidence of past sexual behavior is never relevant, however. Evidence of past sexual conduct, such as meeting men in bars before consenting to sex or other distinctive sexual patterns, could be relevant if it demonstrates "enough similarity between the past consensual sexual activity and defendant's claim of consent." *Id.* at 11. We ruled in *Hudlow* that if such evidence is of minimal relevance, "the evidence may be excluded if the State's interest in applying the rape shield law is compelling in nature." *Id.* at 16. If the evidence is of

high probative value, however, "no state interest can be compelling enough to preclude its introduction consistent with the Sixth Amendment and Const. art. 1, § 22." *Id.* As previously analyzed, the sex party evidence is Jones's entire defense. It could not be of higher probative value, so the rape shield statute could not be used to bar such evidence even if it did apply.

¶22 The rape shield statute cannot be a separate basis for excluding this evidence as it does not apply to this case. Furthermore, even if the rape shield statute *did* apply, the sex party testimony is of extremely high probative value and cannot be barred without violating the Sixth Amendment.

III. The Constitutional Error Is Not Harmless

¶23 The Court of Appeals correctly stated that error of constitutional magnitude can be harmless if it is proved to be harmless beyond a reasonable doubt. *Chapman v. California*, 386 U.S. 18, 24, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967). Error is harmless "if we are convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without the error." *State v. Smith*, 148 Wn.2d 122, 139, 59 P.3d 74 (2002) (citing *State v. Whelchel*, 115 Wn.2d 708, 728, 801 P.2d 948 (1990)). Admittedly, Jones's version of the events is not airtight. He did not call any of the other members of the alleged sex party as witnesses, K.D's testimony directly contradicted Jones's account, and only Jones's semen was found on K.D. Nevertheless, a reasonable jury that heard of a consensual sex party may have been inclined to see the sexual encounter in a different light. The jury would have heard a completely different account of the events of that night, so it is possible that a reasonable jury may have reached a different result. The trial court's error prevented Jones from presenting his version of the events. We therefore

conclude that the trial court's constitutional error was not harmless and reverse and remand for a new trial.[2]

## IV. The State Must Refrain from Misconduct on Remand

¶24 Jones argues that the prosecutor committed prejudicial misconduct during closing argument by (1) commenting on Jones's exercise of his right to remain silent and (2) commenting on Jones's refusal to provide a DNA swab sample. This misconduct occurred when the prosecutor (1) argued that Jones had fled to Texas and never called the police to try to clear up what had happened with his niece and (2) highlighted how Jones had provided a DNA swab sample only *after* a court order forced him to do so. 2 VRP at 330, 334. The Court of Appeals assumed that both comments by the prosecutor were improper. *Jones*, 2008 WL 4889993, at *7, 2008 Wash. App. LEXIS 2682, at *15. Since Jones had a Fifth Amendment right to remain silent with the police and a Fourth Amendment right to refuse to provide a DNA swab sample, we affirm the Court of Appeals ruling that these comments were improper. We go so far as to say that the court's imprimatur is now upon the State and that such argument is improper and should not be repeated on remand.

## CONCLUSION

¶25 We reverse the Court of Appeals and remand for a new trial. The trial court improperly applied the rape shield law, violating Jones's Sixth Amendment right to present a defense. This error was not harmless beyond a reasonable doubt, as a reasonable jury could have found differently if it heard the proffered evidence. We also put our imprimatur upon the State to refrain from improper comments during closing argument.

MADSEN, C.J., and C. JOHNSON, ALEXANDER, SANDERS, CHAMBERS, FAIRHURST, J.M. JOHNSON, and STEPHENS, JJ., concur.

---

[2] Because we order a new trial based solely on a violation of Jones's Sixth Amendment rights, we need not address whether ER 404(b) was improperly applied.