IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 74314-7-I |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PETER JARED MCDUFFIE, | ) | |
| | ) | |
| Appellant. | ) | FILED: April 24, 2017 |

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON
2017 APR 24 AM 9:00

SCHINDLER, J. — A jury convicted Peter Jared McDuffie of possession of a stolen vehicle and obstruction of a law enforcement officer. We affirm.

On July 4, 2013, Kathleen Stewart drove her "[v]ibrant pink" 1994 Mercury Tracer to pick up Joseph Barlesh and go to a family Fourth of July party. When Stewart arrived, Barlesh's friend Peter Jared McDuffie asked if he could go with them to the party.

Stewart, Barlesh, and McDuffie arrived at the party around 2:00 p.m. At approximately 10:45 p.m., McDuffie told Stewart he planned to walk home. But Stewart said he needed to get his backpack from her car and asked for the car keys. Stewart handed McDuffie the keys and told him to "bring my keys back." McDuffie and Barlesh walked to the car. A few minutes later, McDuffie and Barlesh drove away in the car. The next day, Stewart called the police to report her car had been stolen.

At approximately 2:00 a.m. on July 24, Kirkland Police Officer Daniel Gaud saw a pink car swerving across the center line. Officer Guad activated the emergency lights on his patrol car to pull the car over. The driver made an "abrupt right" turn and came to a stop. When the car stopped, the driver's side door opened and a man got out. The man "took off" running. Officer Gaud shouted multiple times, " 'Stop. Stop right there. Police,' " but the man did not stop.

Because there were three passengers in the car, Officer Guad did not pursue the fleeing man. The three passengers were identified as Iliana McElrone, Brittney Vasquez, and Jonathan Burkett. Officer Gaud found a driver's license in the pocket of the driver's door. The name on the driver's license was "McDuffie, Peter Jar[e]d." Officer Guad also found a number of credit cards belonging to "Peter J. McDuffie" in the car.

On May 22, 2014, the State charged McDuffie with possession of a stolen vehicle and obstruction of a law enforcement officer. McDuffie pleaded not guilty. The State identified Stewart, Officer Gaud, and McElrone as witnesses for trial.

The defense filed a motion to impeach McElrone's credibility under ER 608 with evidence that on August 18, 2015, McElrone was charged with theft of a motor vehicle. The defense provided a copy of the information and the certification for determination of probable cause.

The information alleged that between June 5 and June 6, 2015, McElrone stole a U-Haul truck "by color and aid of deception." The certificate of probable cause states that on June 9, 2015, the police responded to a report of a stolen U-Haul truck at Burien U-Haul. At approximately 5:30 p.m. that same day, the police found the U-Haul truck at

1031 SW 128th Street in Burien. A man identified as Robert J. Perry was "asleep in the passenger seat of the vehicle." Perry told the police that McElrone was inside a nearby store. Police officers arrested McElrone inside the store. McElrone had a key to the U-Haul truck. The certificate of probable cause states the police seized "multiple bank cards, a driver's license, a social security card, a[n] EBT[1] card and, bank checks."

The court held a pretrial hearing. McDuffie argued the court had discretion to allow him to cross-examine McElrone under ER 608 because the theft of a motor vehicle charge went "directly to her truthfulness." The court reserved ruling until McElrone could appear with an attorney.

At a later hearing, McElrone's attorney told the court that McElrone "[a]bsolutely" would invoke her Fifth Amendment[2] right against self-incrimination and refuse to answer questions about the theft of a motor vehicle charge. McDuffie argued that McElrone must assert her Fifth Amendment right on a "question by question" basis rather than making a "blanket assertion of the Fifth Amendment right." The court agreed and ruled McElrone must invoke her Fifth Amendment right against self-incrimination on a "question by question" basis.

Defense counsel argued he was entitled to cross-examine McElrone about the charge of theft of a motor vehicle by color and aid of deception. McElrone's attorney argued questions about McElrone's pending charge were not relevant to impeach her testimony about what occurred on July 24, 2013. The court concluded the probative value of the testimony outweighed any prejudice and McDuffie could ask McElrone if she "did . . . steal a car" in June 2015 because "[t]hat's the conduct we're talking about."

---

[1] Electronic benefits transfer.
[2] U.S. CONST. amend. V.

3

"The question you can ask is did she steal a car on whatever day it was. That's the conduct we're talking about."

Defense counsel then argued the "details of how that occurred," including documents found in the cab of the U-Haul, "are also fair game."

> [DEFENSE COUNSEL]: I also think that there is — well, you're correct. I think there is actually — expanding that a little bit further, Your Honor. In terms of the details of how that occurred and then other things that were found at the time of arrest in terms of other identifications, other financial documents, keys were found in the cab of the U-Haul that she was driving. I think those are also fair game as well.
> Those are also specific instances of conduct of — indicative of truthfulness because they do go to the issue of theft or deception or fraud.
> THE COURT: What's found in the car ties back to her, is that what you're telling me?
> [DEFENSE COUNSEL]: That's correct.

McElrone's attorney argued those questions were "far afield from the charge." The court agreed and ruled the questions McDuffie sought to ask about the items the police found in the cab of the U-Haul were "extraneous" and not relevant to McElrone's truthfulness under ER 608.

> THE COURT: I think it's more extraneous. The question that bears upon her credibility and her truthfulness is whether or not she stole a motor vehicle. . . .
> . . . I think that's the only question I'm going to permit.

During the trial, Stewart testified that when she handed McDuffie the keys to her car, she did not "give him permission to do anything other than get his backpack." Stewart said she did not give McDuffie permission to "drive or take [her] vehicle or possess [her] vehicle in any way."

Officer Gaud testified that when he pulled over the pink car, he pointed the patrol car spotlight and headlights on the car. Officer Gaud said he was approximately 10 feet from the driver when the driver started running away from the car. Officer Gaud said he

saw a "side profile" of the man as he ran away. Officer Gaud testified the driver was a "[w]hite male" with "[r]eddish blonde" hair, between five feet four inches and five feet five inches tall, and weighed between 140 and 150 pounds. Officer Guad identified McDuffie in court as the man that ran away from the car. The court admitted McDuffie's driver's license and the credit cards found in the car as exhibits. Officer Gaud testified he was "[o]ne hundred percent" certain the photograph on McDuffie's driver's license matched the man he saw run away from the car.

McElrone testified that on July 24, 2013, she and her roommate Brittney Vasquez met McDuffie and his friend "Johnny" at a beach. McElrone said she and Vasquez left with McDuffie and Johnny in a pink car. McElrone testified McDuffie had the key to the car and drove the car. After the police pulled the car over, McElrone said McDuffie "ran out of the car." McElrone identified McDuffie in court as the driver of the car.

On cross-examination, defense counsel asked McElrone, "In 2015, did you rent a U-Haul using someone else's identification?" McElrone invoked her Fifth Amendment right against self-incrimination and refused to answer the question. The defense then asked McElrone to "diagram" where the individuals in the car were sitting. McElrone testified McDuffie was in the driver's seat, Johnny was in the front passenger seat, Vasquez was in the back seat behind Johnny, and she was in the back seat behind McDuffie. But McElrone said she did not remember "[c]ertain details" about the night of July 24, 2013.

The jury found McDuffie guilty as charged of possession of a stolen vehicle and obstruction of a law enforcement officer. McDuffie seeks reversal.

McDuffie contends the trial court violated his constitutional right to present a defense by limiting cross-examination of McElrone under ER 608.

A criminal defendant has a constitutional right to present a defense and confront an adverse witness. U.S. CONST. amend VI; WASH. CONST. art. I, § 22; State v. Jones, 168 Wn.2d 713, 720, 230 P.3d 576 (2010); State v. O'Connor, 155 Wn.2d 335, 348, 119 P.3d 806 (2005). However, neither the right to present a defense nor the right to cross-examination is absolute. Jones, 168 Wn.2d at 720; O'Connor, 155 Wn.2d at 348; State v. Maupin, 128 Wn.2d 918, 924-25, 913 P.2d 808 (1996). A criminal defendant has no constitutional right to present irrelevant or otherwise inadmissible evidence. Jones, 168 Wn.2d at 720; O'Connor, 155 Wn.2d at 349. "The scope of cross-examination is within the discretion of the trial court." State v. Garcia, 179 Wn.2d 828, 844, 318 P.3d 266 (2014); ER 611(b). We review the decision to exclude testimony under ER 608 "only for an abuse of discretion." State v. Clark, 143 Wn.2d 731, 766, 24 P.3d 1006 (2001). A court abuses its discretion "when a decision is manifestly unreasonable or based upon untenable grounds." O'Connor, 155 Wn.2d at 351. We will reverse the trial court "only if no reasonable person would have decided the matter as the trial court did." O'Connor, 155 Wn.2d at 351.

Under ER 608(b), a party may, "in the discretion of the court" and if the conduct is "probative of . . . untruthfulness," cross-examine a witness about "[s]pecific instances of . . . conduct" to attack the witness's credibility. ER 608(b) states:

> **Specific Instances of Conduct.** Specific instances of the conduct of a witness, for the purpose of attacking or supporting the witness' credibility, other than conviction of crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross examination of the witness (1) concerning the witness' character for

6

truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

In exercising its discretion under ER 608(b), the trial court considers "whether the instance of misconduct is relevant to the witness's veracity on the stand and whether it is germane or relevant to the issues presented at trial." O'Connor, 155 Wn.2d at 349. "[N]ot every instance of a witness's (even a key witness's) misconduct is probative of a witness's truthfulness or untruthfulness under ER 608(b)." O'Connor, 155 Wn.2d at 350.

Here, the court ruled McDuffie could attack McElrone's credibility on cross-examination by asking about the pending charge for theft of a U-Haul truck by color and aid of deception. Specifically, whether McElrone stole the U-Haul truck. Defense counsel also argued he should be allowed to also cross-examine McElrone about the identification and financial documents "found in the cab of the U-Haul." The court ruled questions about the items found in the cab of the truck were extraneous and not relevant to the truthfulness of McElrone's testimony about the events of July 24, 2013. The court did not abuse its discretion by limiting cross-examination of McElrone under ER 608. The certificate of probable cause states that when the police found the U-Haul truck, a man identified as Robert Perry was asleep in the cab of the truck and the police arrested McElrone while she was inside a nearby store.

McDuffie also argues the court abused its discretion in limiting cross-examination because McElrone was the only witness who identified him as the driver of the pink car. McDuffie relies on Clark, 143 Wn.2d at 731. In Clark, the court states that "[f]ailing to allow cross-examination of a state's witness under ER 608(b) is an abuse of discretion if

7

the witness is crucial and the alleged misconduct constitutes the only available impeachment." Clark, 143 Wn.2d at 766. But here, McElrone was not the only witness who identified McDuffie as the driver of the pink car. Officer Gaud testified he saw a "side profile" of the man who fled the car. Officer Gaud identified McDuffie in court and testified he was "[o]ne hundred percent" certain McDuffie was the man he saw getting out of the door of the car on the driver's side and running away.

We affirm the jury verdict.

WE CONCUR: