# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| STATE OF WASHINGTON, | No. 51282-3-II |
| Respondent, | |
| v. | |
| J.M.V.W., | UNPUBLISHED OPINION |
| Appellant. | |

WORSWICK, J. — JW, a minor, appeals his juvenile adjudications for harassment—bodily injury[1] and fourth degree assault.[2] JW argues that the trial court violated his constitutional right to confront an adverse witness and that the State violated his right to a fair trial by failing to correct a witness's false testimony. We affirm.

## FACTS

Margaret Mitchell and her boyfriend, John Warberg, shared a house with JW and his mother, Margaret Watson. During an argument between Mitchell and Watson, JW intervened with a baseball bat in his hand and said, "If you touch my mother I'll bash your head in!" Clerk's Papers (CP) at 6. Watson hit Mitchell, and when Mitchell ran to the other room, JW grabbed Mitchell's arms, pinned them behind her back, and said, "Come on, Mom, hit her again!" CP at 7.

---

[1] RCW 9A.46.020(1)(a)(i),(b).

[2] RCW 9A.36.041(1)-(2).

Warberg was outside on the back porch when the altercation occurred. He saw Watson

and Mitchell gesturing as if they were arguing, and saw JW with a baseball bat. Warberg

watched Watson hit Mitchell, Mitchell run to the other room, and JW grab Mitchell's hands and

pin them behind her back.

The State charged JW with harassment—bodily injury and fourth degree assault. At trial,

witnesses testified to the above facts. On cross-examination, JW attempted to impeach

Mitchell's credibility with a motive to lie. The following exchange occurred:

> [JW]: It's correct that you recently had some issues later with CPS [(Child Protective Services)] about—
> [The State]: Objection; relevance.
> THE COURT: The objection is sustained. Next question, please.
> [JW]: Your Honor, I would ask to be heard on that objection.
> THE COURT: Ask your next question. The objection is sustained.
> [JW]: Did you believe Ms. Watson had ever reported you to CPS?
> [Mitchell]: No.
> [The State]: Objection; relevance.
> THE COURT: Where are you going with this, [JW's counsel]?
> [JW]: I believe that part of Ms. Mitchell's actions were in retaliation against Ms. Watson for her understanding of the CPS situation.
> THE COURT: All right. I'm going to overrule the objection. I'll let you ask some questions along these lines. The question that I saw an answer to here is, do you believe that Ms. Watson had reported to CPS, and the answer was no. Okay. Go ahead and ask your next question.
> [JW]: Would you have any concerns about that situation in relation to recent arrests you had out of Seattle Municipal or another jurisdiction?
> [The State]: Objection; relevance and also speculation. There's no information before the Court regarding—
> THE COURT: Please don't answer.
> [The State]: — recent arrests.
> THE COURT: [JW's counsel], you asked a compound question. I have to sustain the objection. Please ask a different question.
> [JW]: Had you recently had a DV assault arrest out of Seattle Municipal Court?
> [Mitchell]: No.
> [The State]: Objection; relevance.
> THE COURT: How is this relevant?

2

[JW]: My understanding is that these are related to her children. There were CPS complaints. She was in a position where any additional arrest[s] could result in significant circumstances for her and also that she had reason to have negative feelings and be more aggressive with Ms. Watson than she normally would be.

THE COURT: She denied knowing about any CPS report. Do you have some evidence to refute that? Help me understand why this is relevant to impeaching this witness's credibility.

[JW]: I think, again, it goes to why she would make false statements and act in a retaliatory manner with Ms. Watson and her son.

[The State]: Your Honor, there's no foundation for these alleged arrests or charges.

THE COURT: [JW's counsel], I'm sorry, but it appears to me you're going very far afield here. I have to agree with [the State's] counsel. There's no foundation for you to ask these questions. I see these questions as speculative. I'm going to sustain the objection.

[JW]: No further questions at this time.

THE COURT: All right. Redirect?

[The State]: Nothing further.

. . . .

(Discussion between counsel; pause in the proceedings.)

[JW]: I'm not sure if we have available for review the record on the answer to the last question about that Seattle DV [(domestic violence)]. I would like to confirm her response at this point in time.

THE COURT: Well, the objection was sustained, so the response doesn't matter.

[The State]: Thank you, Your Honor.

[JW]: I guess I'm not sure if the issue is something appropriate to put on the record.

[The State]: Well, put it on the record and we'll find out.

[JW]: Well, she answered that no, she did not know about this. I have had conversations with the State about this arrest so the State is aware of it.

[The State]: The State is aware of it, yes.

[JW]: So their witness has just knowingly perjured themselves and the State needs to address this.

THE COURT: [JW's counsel], I'm going to hear from the next witness in this case.

Report of Proceedings (RP) (Nov. 14, 2017) at 40-44.

The juvenile court found Mitchell was a credible witness and concluded that JW was guilty of harassment and fourth degree assault. JW moved for new trial arguing that Mitchell perjured herself by answering in the negative regarding the Seattle domestic violence claim, and that the State knew of this perjury and failed to remedy it. The trial court denied the motion and stated during the hearing that it did not consider Mitchell's "no" answer in its deliberations. RP (Jan. 19, 2018) at 144. JW appeals his adjudications.

ANALYSIS

I. RIGHT TO CONFRONT

JW argues that the juvenile court violated his constitutional right to confront Mitchell, an adverse witness.[3] We disagree.

We review an alleged denial of a constitutional right de novo. *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010). Both the federal and state constitutions guarantee a defendant's right to confront and cross-examine adverse witnesses. U.S. CONST. amend VI; WASH. CONST., art. I, § 22; *State v. Darden*, 145 Wn.2d 612, 620, 41 P.3d 1189 (2002). The right to confront an adverse witness is not absolute, however. *Darden*, 145 Wn.2d at 620. Courts may, within their sound discretion, deny cross-examination if the evidence sought is vague, argumentative, or speculative. *Darden*, 145 Wn.2d at 620-21. If evidence is relevant and otherwise admissible, the burden shifts to the State to show that the evidence is so prejudicial as to disrupt the fairness of the fact-finding process. *Jones*, 168 Wn.2d at 720. The trial court must balance the State's

---

[3] Juvenile proceedings provide "the[] full range of constitutional rights" to accused juveniles. *State v. Lawley*, 91 Wn.2d 654, 657, 591 P.2d 772 (1979); *see also In re Gault*, 387 U.S. 1, 12, 87 S. Ct. 1428, 18 L. Ed. 527 (1967).

interest in excluding the evidence against a defendant's need for the information. *Jones*, 168 Wn.2d at 720. The trial court should exclude the relevant evidence if the State's interest outweighs the defendant's need. *Jones*, 168 Wn.2d at 720.

Evidence of a motive to lie is relevant to a witness's credibility. *State v. Lubers*, 81 Wn. App. 614, 623, 915 P.2d 1157 (1996). When the case is primarily dependent on one witness, that witness's credibility or motive is subject to close scrutiny. *State v. Roberts*, 25 Wn. App. 830, 834, 611 P.2d 1297 (1980).

Here, the evidence in dispute was speculative. JW sought to impeach Mitchell's credibility with a motive to lie, namely her belief that Watson had filed a CPS complaint involving Mitchell. But JW was not able to establish that Mitchell had such a belief. The juvenile court permitted JW some leeway in this questioning until it became clear that Mitchell did not believe that Watson had reported her to CPS. Next, JW began inquiring whether Mitchell had recently been arrested for a domestic violence assault "out of Seattle Municipal Court." RP (Nov. 14, 2017) at 41. The State objected. JW attempted to justify this line of questioning by stating that he understood that the arrest was "related" to the children and also related to a CPS complaint, and thus Mitchell would be motivated to "be more aggressive" with Watson than normal. RP (Nov. 14, 2017) at 42.

The juvenile court noted that Mitchell denied knowing about the CPS report, and asked JW for evidence to refute Mitchell. When JW was unable to provide any evidence to support the CPS report claim, the juvenile court stated, "I'm sorry, but it appears to me you're going very far afield here. I have to agree with [the State's] counsel. There's no foundation for you to ask

these questions. I see these questions as speculative. I'm going to sustain the objection." RP (Nov. 14, 2017) at 42.

We hold that the juvenile court correctly determined that JW's questions regarding Mitchell's potential CPS and domestic violence issues were too speculative. The juvenile court allowed JW to ask some questions regarding the CPS report. However, as JW's questions advanced to include a domestic violence arrest in Seattle, JW failed to sufficiently link this evidence to Mitchell's potential motive to lie, thus the trial court did not err in excluding it. Regarding Mitchell's alleged DV arrest, JW argued that he believed that the DV arrest involved the children, which would have made Mitchell be aggressive toward Watson. But even assuming Mitchell had been arrested for DV, the trial court correctly ruled that such evidence was too speculative to prove Mitchell's motive to lie at JW's trial, and was therefore irrelevant. Accordingly, the juvenile court did not violate JW's right to confront an adverse witness.

## II. RIGHT TO A FAIR TRIAL

JW argues that his right to due process was violated when the prosecutor did not correct Mitchell's allegedly false testimony. We disagree.

Under the United States Constitution, the Sixth and Fourteenth Amendments guarantee persons accused of a crime the right to a fair trial. *State v. Davis*, 141 Wn.2d 798, 824-25, 10 P.3d 977 (2000). The Washington Constitution provides a similar safeguard. WASH. CONST. art. I, §§ 3, 22.

The due process clause of the Fourteenth Amendment to the United States Constitution imposes on prosecutors a duty not to introduce perjured testimony or use evidence known to be false to convict a defendant. *State v. Finnegan*, 6 Wn. App. 612, 616, 495 P.2d 674 (1972). This

duty requires the prosecutor to correct State witnesses who testify falsely. *Finnegan*, 6 Wn. App. at 616. A conviction obtained by the knowing use of perjured testimony must be set aside if there is any reasonable likelihood that the false testimony could have affected the judgment of the fact-finder. *State v. Larson*, 160 Wn. App. 577, 594, 249 P.3d 669 (2011). To prove that the State knowingly used false testimony, the defendant must show that (1) the testimony or evidence was actually false, (2) the prosecutor knew or should have known that the testimony was actually false, and (3) the false testimony was material. *United State v. Zuno-Arce*, 339 F.3d 886, 889 (9th Cir. 2003).

This test for a prosecutor knowingly introducing false testimony or failing to correct a witness's perjury requires the witness's controversial statement to be admitted during the proceeding. *See Larson*, 160 Wn. App. at 594; *Finnegan*, 6 Wn. App. at 616. We presume the trial court judge presiding over a bench trial does not consider inadmissible evidence when making its findings. *State v. Gower*, 179 Wn.2d 851, 855, 321 P.3d 1178 (2014).

Here, JW has not shown that the State knowingly used false testimony. The juvenile court sustained the State's objection following Mitchell's "no" answer, thus the response was not admitted testimony. RP (Nov. 14, 2017) at 42. Moreover, the juvenile court specifically stated that it did not consider Mitchell's response in its decision. Because the allegedly false statement was not admitted as testimony, JW fails to show that the State knowingly used false testimony. As a result, the prosecutor did not violate JW's right to a fair trial.

We affirm.

No. 51282-3-II

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
Worswick, P.J.

We concur:

_____
Glasgow, J.

_____
Cruser, J.