IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 36085-7-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| PATRICIA ANN VITTORIO, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, C.J. — Patricia Vittorio appeals her convictions for second degree theft, making a false statement to a public official, and three counts of third degree malicious mischief. Ms. Vittorio argues the trial court violated her Sixth Amendment to the United States Constitution right to due process by excluding evidence relevant to her defenses. We agree that the trial court erred by excluding defense evidence, but conclude that the evidence related only to one of her five convictions. We, therefore, affirm four of her five convictions, and reverse and remand one conviction for a new trial.

FACTS

Patricia Vittorio and James Elliott started a romantic relationship in early 2017. She and her three children moved into Mr. Elliott's house around the beginning of

July 2017.  The relationship quickly deteriorated, and Ms. Vittorio proceeded to move out. Suspecting that Ms. Vittorio might cause trouble, Mr. Elliott's roommate—Stephen Mendenhall—placed a dash cam video camera in the house to record events.  Mr. Mendenhall testified that he obtained Mr. Elliott's permission to video and audio record events.  He also told Ms. Vittorio that he was recording video and audio footage.  The dash cam was mounted on a curtain rod above the upstairs living room window.  The video recorded some of Ms. Vittorio's conduct on July 16, 2017—the day she moved out of Mr. Elliott's house.

*Making a false statement to a public servant*

On the video, admitted as State's Exhibit 1 and played for the jury, Ms. Vittorio can be seen pushing an empty bookcase down the stairs.  The video shows her letting go of the bookcase and it falling down the stairs.  She then makes an anguished groan for no apparent reason.  Shortly after, out of view of the camera, Ms. Vittorio can be heard saying, "I am calling the cops."  Ex. 1, File 1 at 0:02:52-0:03:00.

Douglas County Sheriff's Deputy Taylor Melton arrived.  Deputy Melton testified that Ms. Vittorio claimed Mr. Elliott pushed a fully loaded bookcase down the stairs on her and that it hurt her ankle.  Ms. Vittorio gave three different versions of how Mr. Elliott allegedly pushed the bookcase on her.  Deputy Melton saw no visible injury to Ms.

Vittorio's ankle. Deputy Melton took a photograph of Ms. Vittorio's ankle and a photograph of the bookcase. As Deputy Melton was leaving, Ms. Vittorio asked to confirm that he took a photograph of the bookcase.

*Malicious mischief relating to Mr. Elliott's fish*

On the video, Ms. Vittorio is seen approaching Mr. Elliott's fish tank carrying a plastic container. She looks around to see if anybody is watching and dumps the contents of the container into the fish tank. She discards the container in the garbage and then returns to the tank and swirls the water with her hand.

Ms. Vittorio testified that she was tasked with caring for the fish and that the contents of the plastic container were pellets Mr. Elliott had given her to feed the fish. She did not explain why she threw the container away. She further testified that she returned to the tank to pull out a silica packet that had fallen in it.

Mr. Mendenhall testified that the fish only ate fish flakes kept in a round container under the fish tank or frozen blood worms that were stored in the freezer in small packets. Mr. Mendenhall stated that no fish food was stored in a plastic container like the one Ms. Vittorio had in the video.

Mr. Elliott testified that all of his fish died soon after Ms. Vittorio moved out. He testified that when he drained the tank, he saw a brown substance and smelled a pungent odor that he believed was cat feces. Everything in the tank had to be thrown away.

*Theft of Mr. Elliott's 65-inch television*

On the video, Ms. Vittorio is seen directing three men carrying a large television that is covered by an orange blanket. One of the men is heard asking Ms. Vittorio if they have the correct television, and Ms. Vittorio is heard confirming that they do.

That evening, Mr. Elliott called the sheriff's office to report that his 65-inch television was missing. Deputy Thomas Williams investigated the missing television. Ms. Vittorio told Deputy Williams that she had purchased a similar television several years before and that the men might have taken Mr. Elliott's television by accident.

With Ms. Vittorio's consent, Deputy Williams searched her apartment for the television. He did not find the television, but he did find the blanket seen in the video that had covered the television. Deputy Williams placed Ms. Vittorio under arrest for theft of the television. During the time that Ms. Vittorio was detained, the television appeared in Mr. Elliott's driveway.

*Malicious mischief relating to urinating in Mr. Elliott's bed*

Mr. Elliott testified his mattress was ruined because Ms. Vittorio urinated on it. He said he knew she did it because she admitted to it. Ms. Vittorio denied she intentionally urinated in his bed.

*Malicious mischief relating to damaging Mr. Elliott's playing cards*

After Ms. Vittorio moved out, Mr. Elliott noticed that his collection of Magic, the Gathering cards were missing and that a large pile of the cards had been destroyed due to laundry detergent being poured on them. Persons subleasing Ms. Vittorio's apartment later returned one binder of cards to Mr. Elliott.

PROCEDURE

*The State's charges against Ms. Vittorio*

The State charged Ms. Vittorio with making a false statement to a public official, second degree theft (relating to the television), and three counts of malicious mischief (relating to Mr. Elliott's fish, his Magic, the Gathering cards, and his mattress). All of the charges were alleged to have occurred on or about July 16, 2017.

*Evidentiary rulings*

Ms. Vittorio sought to introduce evidence at trial that the trial court excluded. There are three categories of evidence that are the subject of this appeal.

1. *Medical testimonies that Ms. Vittorio was dehydrated and had a vaginal tear were excluded*

Some of the excluded evidence related to the malicious mischief charge involving the urine-soaked mattress. Ms. Vittorio apparently received medical attention early on July 16, 2017. She sought to have a doctor testify that she was dehydrated and a nurse to testify she had a vaginal tear. She argued these witnesses would help corroborate her claim that the day before she moved out, Mr. Elliott prevented her from leaving her room, turned the heat up in the house on a hot day, and she became dehydrated and passed out. She further claimed that although she passed out in her bedroom, she awoke the following morning in Mr. Elliott's bed, and the mattress was soaked in urine and blood. She further claimed that the vaginal tear supported an inference she was raped by Mr. Elliott after she passed out and that she urinated on his mattress involuntarily while she was unconscious.[1]

The State argued that this evidence was irrelevant to the charges. The State alternatively argued that Ms. Vittorio could testify about her own physical condition. The State also argued that Ms. Vittorio's testimony of what occurred while she was unconscious was inadmissible speculation. The trial court agreed.

---

[1] In fairness to the trial court, Ms. Vittorio's argument was not as clear as the above description.

    2.     *Ms. Vittorio's testimony—that when she woke up in Mr. Elliott's bed it was soaked in her own urine and blood—was arguably excluded*

The trial court ruled that Ms. Vittorio could not testify that Mr. Elliott turned up the heat and later sexually assaulted her. It reasoned that Ms. Vittorio did not have actual knowledge that these things occurred.

The trial court also ruled that Ms. Vittorio could testify that when she woke up in Mr. Elliott's bed, it was soaked in her own urine and blood. This evidence was central to her defense that she did not knowingly urinate in Mr. Elliott's bed.

Arguably, some or all of this evidence was excluded from the jury:

> [DEFENSE COUNSEL:]  Did you ever pee on the bed of Mr. Elliott?
> [MS. VITTORIO:]  Yes, I did.
> [DEFENSE COUNSEL:]  Can you tell me how you knew you did that?
> . . . .
> [MS. VITTORIO:]  I woke up in James Elliott's bed for the first time I've ever been in James Elliott's room from being unconscious after having experienced a health-related issue to the heat and having been given medication, I woke up unconscious in James Elliott's bed in my own urine and covered in my own blood.  It was not deliberate and it was not malicious.  And I've never urinated on purpose.
> MS. HARTNELL:  Objection, nonresponsive.
> THE COURT:  Sustained.[2]

---

[2] Only the last two sentences were nonresponsive.  Arguably, the trial court's ruling permitted the jury to consider the first sentence of Ms. Vittorio's answer.

Report of Proceedings (RP) at 179-80.

> 3.    *Telephone call between Mr. Elliott and Ms. Vittorio's ex-husband*

Some excluded evidence related to the remaining charges.  Ms. Vittorio claimed she overheard Mr. Elliott on his speakerphone with her ex-husband.  Ms. Vittorio claimed Mr. Elliott agreed to assist her ex-husband in obtaining custody to their three children by falsely accusing her of crimes.

The State responded that this was inadmissible hearsay.  Ms. Vittorio later claimed that she was entitled to cross-examine Mr. Elliott about the telephone call and, if he denied it, Ms. Vittorio was entitled to "present contrary evidence."  RP at 65.  The trial court excluded the telephone call evidence as irrelevant.

*Jury verdicts, sentence, and restitution order*

The case proceeded to a jury trial.  The jury found Ms. Vittorio guilty of second degree theft, making a false statement to a public official, and three counts of third degree malicious mischief.  The trial court sentenced Ms. Vittorio to four months in jail for each conviction and ran each sentence concurrent.  In addition, the trial court entered a restitution order in favor of Mr. Elliott.

Ms. Vittorio timely appealed.

8

ANALYSIS

STANDARD OF REVIEW

A claim of denial of Sixth Amendment rights is reviewed de novo. *State v. Duarte Vela*, 200 Wn. App. 306, 317, 402 P.3d 281 (2017) (citing *State v. Jones*, 168 Wn.2d 713, 719, 230 P.3d 576 (2010)), *review denied*, 190 Wn.2d 1005, 413 P.3d 11 (2018). This court generally reviews evidentiary rulings for an abuse of discretion. *State v. Horn*, 3 Wn. App. 2d 302, 310, 415 P.3d 1225 (2018). But when a trial court's evidentiary rulings exclude relevant evidence, the more the exclusion prejudices an articulated defense theory, the more likely we will find that the trial court abused its discretion. *Duarte Vela*, 200 Wn. App. at 317.

SIXTH AMENDMENT RIGHT TO PRESENT A DEFENSE

Ms. Vittorio argues the trial court violated her Sixth Amendment right to present a defense by excluding relevant evidence that created a reasonable doubt about whether she committed the crimes.

A defendant's opportunity to be heard in her defense, including the rights to examine witnesses against her and to offer testimony is basic in our system of justice. *Id.* (quoting *Jones*, 168 Wn.2d at 720). However, this right is not absolute. *Id.* (quoting *Jones*, 168 Wn.2d at 720). The evidence sought to be introduced must be at least

minimally relevant; a defendant does not have the right to present irrelevant evidence. *Id.* (quoting *Jones*, 168 Wn.2d at 720). "'Relevant evidence' means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence." ER 401.

If the evidence is relevant, the State bears the burden to show that its admission would be "so prejudicial as to disrupt the fairness of the fact-finding process at trial." *State v. Darden*, 145 Wn.2d 612, 622, 41 P.3d 1189 (2002). If the State makes such a showing, the court must then weigh the State's interest in excluding the evidence with the defendant's need for the information sought. *Id.* Only if the State's interest outweighs the defendant's need can otherwise relevant evidence be excluded. *Id.*

A. *The trial court erred by excluding evidence related to the malicious mischief charge of urinating in Mr. Elliott's bed*

Ms. Vittorio's sole defense for the malicious mischief charge of urinating in Mr. Elliott's bed was that she did so while unconscious. The evidence she wished to admit to support her defense was two fold. First, she wished to testify that the day before she moved out, Mr. Elliott prevented her from leaving her room, the heat was turned up on a hot day, she passed out from dehydration, and she awoke in Mr. Elliott's bed the next day with the bed covered in urine and blood. Second, she wished to have a nurse and a doctor testify that she had a vaginal tear and that she was dehydrated. Evidence that she was

10

dehydrated would support her claim that she passed out the day before, and evidence of her vaginal tear would support an inference that she was raped while unconscious, thus causing her to bleed and urinate in Mr. Elliott's bed. The need for medical corroboration was important due to the State's successful attacks on Ms. Vittorio's credibility. We have no doubt that the above evidence was relevant to Ms. Vittorio's articulated defense.

Whether the evidence and inference of rape are believable is an issue of fact for the jury, and only the jury. "When it comes to ensuring a defendant's Sixth Amendment right to present a defense, it is best to admit relevant evidence and trust the State's cross-examination to ferret out falsities." *Duarte Vela*, 200 Wn. App. at 323-24.

Because Ms. Vittorio's testimony that she awoke in her own blood and urine was relevant to whether she maliciously urinated in Mr. Elliott's bed, the trial court should have balanced the State's interest in excluding the testimony with the defendant's need for the testimony. *Darden*, 145 Wn.2d at 622. The State asserts that it had an interest in excluding the above evidence because it was not relevant. We disagree. On the other hand, Ms. Vittorio's claim that she passed out and involuntarily urinated in Mr. Elliott's bed, somewhat buttressed by independent medical evidence, was the only evidence she had to support her defense to that count. We conclude that the trial court abused its discretion by excluding the above evidence.

The State contends that any erroneous exclusion was harmless error. An error of constitutional magnitude can be harmless if it is proved to be harmless beyond a reasonable doubt. *Jones*, 168 Wn.2d at 724-25. An error is harmless if the reviewing court is convinced beyond a reasonable doubt that any reasonable jury would have reached the same result without the error. *Id.* at 724.

In the present case, the court's error was not harmless beyond a reasonable doubt. Given an opportunity to explain the surrounding context, especially if buttressed by some medical evidence, the jury may have believed Ms. Vittorio that she urinated in Mr. Elliott's bed while she was unconscious. We, therefore, reverse Ms. Vittorio's conviction for that count of malicious mischief and remand that count for a new trial.

Ms. Vittorio has already served her four month sentence. We direct the State to elect whether to retry her on the remanded count. If it elects not to, the trial court should amend the judgment and the restitution order accordingly. If it elects to retry the remanded count, the trial court should wait until after the jury's verdict to update the

judgment and the restitution order.[3]

      B.      *To the extent the telephone call evidence was admissible, its exclusion was harmless error beyond a reasonable doubt.*

Ms. Vittorio argues the trial court erred by excluding the telephone call evidence.

She argues the excluded evidence was not hearsay because she sought to admit it to

establish Mr. Elliott's state of mind.

The Sixth Amendment does not give a defendant the right to present irrelevant

evidence. *Id.* at 720. Whether Mr. Elliott *intended* to conspire is irrelevant. Ms. Vittorio

clearly sought to admit the telephone call evidence not to establish Mr. Elliott's state of

mind, but to establish the truth of the purported conspiracy. She argued to the trial court

that the evidence established that Mr. Elliott caused her to be falsely arrested so her ex-

husband would have custody of their children. The trial court did not abuse its discretion

by excluding the hearsay telephone call evidence.[4]

---

[3] If Ms. Vittorio is retried and convicted on this gross misdemeanor count, the trial court will need to determine whether additional jail time is appropriate. *See State v. Brown*, No. 95734-7, slip op. at 14 (Wash. May 2, 2019), http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion&filename=957 347MAJ (a presumption of judicial vindictiveness does not arise when the total sentence upon resentencing is not greater than the original sentence). We express no opinion.

[4] It is unclear whether Ms. Vittorio is also arguing that the trial court erred by denying her the ability to cross-examine Mr. Elliott about the purported telephone call. Had Mr. Elliott *admitted* he conspired with her ex-husband, this would have been powerful evidence. Based on the record, we highly doubt Mr. Elliott would have

No. 36085-7-III
*State v. Vittorio*

Affirm four convictions, reverse one, and remand for possible retrial.

A majority of the panel has determined this opinion will not be printed in the

Washington Appellate Reports, but it will be filed for public record pursuant to

RCW 2.06.040.

_____
Lawrence-Berrey, C.J.

WE CONCUR:

_____          _____ (result only)
Fearing, J.                                                    Pennell, J.

---

admitted to conspiring with Ms. Vittorio's ex-husband. Had Mr. Elliott *denied* conspiring, Ms. Vittorio could have testified to what she overheard, with the limitation that her testimony was admissible only for the jury's determination of Mr. Elliott's credibility.

Had the phone call evidence been admitted for this limited purpose, we conclude beyond a reasonable doubt that it would have been insufficient to change the jury's verdicts on the affirmed convictions. Those verdicts were based on video evidence and other evidence independent of Mr. Elliott's testimony. *See State v. Romero-Ochoa*, No. 95905-6, slip. op. at 30 (Wash. May 16, 2019) http://www.courts.wa.gov/opinions/index.cfm?fa=opinions.showOpinion&filename=959 056MAJ (holding that overwhelming circumstantial evidence can render a constitutional error harmless beyond a reasonable doubt).

14